Good morning. May it please the Court. Damian Lillis for Plaintiff and Appellant Brett Roberts, who is with us here today in the back. Reversal in this case is required for some pretty basic reasons, including the obligation of a party moving for summary judgment to produce competent evidence proving that there is no disputed fact that is a basis for their motion. The defendants here failed to carry that burden in two respects that we'll get to. But there also were tribal issues and material fact that the district court failed to recognize in granting summary judgment. This case arises out of basically a business purchase where the defendants purchased the plaintiff's business, hired him on as an employee, and through that employment and continued working with the defendant, he'd earned substantial earn-out payments. There's an employment contract that has expressed provisions that limit the ability of the defendant to terminate the plaintiff, and that's at excerpts of Record 1186. And in moving for summary judgment, the defendants assumed the affirmative burden of proving that there was no disputed fact that they had cause to terminate the plaintiff because he allegedly and materially violated a law in contravention of the employment agreement. So in assuming that burden, they took it on head-on. We're going to prove that there is cause that there was, in fact, a violation of law. They then cite three, we'll call them document retention regulations in the Code of Federal Regulations that require the maintenance of certain certificates of origin for a period of five years. Now, this is an import-export business, buying and selling. So are you you're sort of sounding like you're skeptical that it's a violation of law. Are you denying that it's a violation of law to violate these regulations by destroying or not maintaining these records for five years? No. If the regulation is violated, it's a violation of law. I might have argued differently in the trial court that these are not the types of laws that the employment agreement contemplated being violated, but that wasn't argued below. So for purposes of appeal, the key here is did the defendants prove, prove, actually prove that there was a violation of law. And that's where they just fell down on this. So the issue, though, is not that the regulations aren't law or that this doesn't so I wasn't sure where you were going with sort of the skepticism sound about whether this was a law. So it sounds like that's not your point. Whether this is law or not hasn't been challenged on this appeal. The problem is the regulations, everybody agrees, only require the retention of a certificate of origin for a period of five years. So if you destroy a certificate of origin that is older, there's no violation of law because there's no obligation to maintain that document. Very straightforward. I don't think there's any dispute about that's what the regulations require. So in moving for summary judgment here. You're not, although your brief spent a great deal of time on this argument that he didn't violate the law. And you're, that's not what you're talking about now. We do argue and we believe that they had the burden in moving for summary judgment to provide evidence that the regulations applied to Mr. Roberts personally and that they failed to carry that burden. But for purposes of efficiency, we can just cut to the chase, I think. Okay. So as to the chase, was this argument made in the district court? Which one, Your Honor? About the five years as to whether he violated the law. Yes. So the, in opposition to the motion for summary judgment, the plaintiff affirmatively brought to the Court's attention that there was a disputed fact as to the age of the certificates of origin in question. I thought that was primarily with regard to the question of whether the property you know, company assets question, whether this was an asset of the company because it was, I mean, it happens as I understand it that the time of the transfer was just about five years. So therefore, the two, there's a sort of fortuitous overlap in the two arguments, but it's kind of fortuitous. The evidence and the argument was in the context slightly different, but it applies with equal force to the question of, one, is there a triable issue of fact, but more importantly is the issue that there's an affirmative obligation on the moving party to satisfy their burden in the first instance. So there was no obligation of Mr. Roberts to even respond or raise any arguments unless the defendants first satisfied that burden. So cutting away from all this who waived what, I don't understand how you get around the statements in your complaint. So Trader, I'm forgetting his name, but when it says that Trader talked about in paragraphs 47 and 46 about half the documents were from before the purchase and half were from after, isn't he admitting that half of them were from after, which means they're within five years and that was in your client's complaint? So no. Why not? Two reasons for that. One, that paragraph was never cited to the district court. So what? It's in your complaint, though. How are you not bound by the statements in your complaint? So one, on the burden-shifting issue, it wasn't presented as the evidence supporting the claim. But if the question then is, is this a judicial admission that takes the issue off the table for purposes of the litigation, the only thing that can be said about paragraph 47 in the Second Amendment complaint is that it's an accurate statement about what Mr. Roberts recalls the Trader, Mr. Duffy, saying. So it's not Mr. Roberts saying, I agree that any of these certificates were five or fewer years old. So then why should — I mean, it's — so I think that's a very fine reading, because usually when you make statements in a complaint, you're stating the facts that support your case. So if you meant that to be what that paragraph was supposed to mean, then I think it should have said, although Mr. Roberts disagrees with the assessment of the dates, Duffy thought they were half from before and half from after. Instead, it just says, Duffy explained what happened, and they're half from before and half from after. And Duffy's the guy who did it. So why don't we take that as the facts that this case is about? Mr. Roberts has never contested that that is an accurate recollection on his part. That's what he remembers Mr. Duffy saying. And his testimony is consistent in deposition to that effect as well. But the question, then, is, is that an admission by Mr. Roberts that Mr. Duffy did, in fact, destroy a certificate of origin that was five or fewer years old? Well, okay. So even if it's — say — say, let's put aside for a second whether it's a judicial admission. Why isn't it just evidence, at least through — from Duffy, that this is actually a document in the right time period? Okay. One, it wasn't cited to the district court for consideration. That — that citation to paragraph 47 only happened here on appeal? The problem is that this is all against the fact that you didn't actually raise anything about this as to this issue in the district court. So although it's true that they have the burden, if you're sending — if every signal is that this is not up for grabs because it's in the complaint, and I think it was also in the deposition, that this is what Duffy said and that — and that — I mean, you just never suggested that there was any problem with the five years. And — and now to — to put out, you know, the magician's hat now is — could appear to be something of a sandbag. The — I don't think there's any issue about sandbagging when a defendant takes on the burden of affirmatively proving a fact on summary judgment and the requirement that nobody disputes it. But a fact that is alleged in the complaint, whether as clearly as it could have been or not, and it could be at least by inference gotten out of the defendant — the plaintiff's deposition as well. Wasn't — didn't he say the same thing in his deposition? Substantially similar, yes. Yes. But, Your Honor — And did Duffy say it, too? Did Duffy say anything about this? Not at all. And, in fact, the defendants didn't cite Duffy's testimony. And fairly construed, Duffy's testimony is, I don't know, probably, with respect to the age. So isn't probably enough for an inference? Probably, and that he said it to this guy, in terms of there being some evidence of this and no counter-evidence? No. It's not enough. The inferences on summary judgment have to run in favor of Mr. Roberts in every respect. All inferences has to run in favor of Mr. Roberts, not the moving party. Okay. In fact, it needs to be strictly construed against the moving party. Okay. But it can't be the case that if you destroy documents so there are no copies left, now it's the other side's burden to somehow show what the dates on those documents were. I mean, there's something very odd about this. Like, they're saying, look, we know you destroyed a whole bunch of documents. We think that violated the law, and we think that means that your employment contract says we had a cause to fire you, and that's what we did. Don't you need to come back and actually have some evidence the other way? I mean, maybe it's their burden in general, but I don't understand how they're supposed to meet this burden when you've destroyed the documents, and you don't even deny that you've destroyed the documents. It's the — it's their burden to prove that a document that was 5 or fewer years old was destroyed. And how are they going to do that? They could have cited Mr. Duffy's testimony and simply asked him what he did. And he — but he says, I don't remember. They're gone, but I think they probably were in the 5 years. So why isn't that what they had to do? So let me — let me read to you his testimony. Go ahead. I seem to have lost my tab. It's in the reply brief, and it's quoted in full. This is at page 16 of the reply. This is an examination by accounts for defendants with Mr. Duffy on the stand. If you recall, how many certificates of origin were shredded? Answer, two. And what were the dates on those certificates of origin? I don't — gestures, no. Actually, it says, I don't, hyphen, no gestures, period, I know. Question. Do you recall if they were before or after the acquisition? Answer. Would have been after probably — let's see. We were acquired in 12th. Let's see what? I'm sorry. We were acquired? We were acquired in 12th, meaning the year 2012. Right. Question. Go back to Exhibit 2, the certificate of origin. What's the date on that? Answer. December 13th. Question. Okay. Thanks. That's the available evidence about what happened here. They didn't cite this in their moving papers for good reason. It's inherently uncertain and ambiguous with respect to whether or not, in fact, a certificate of origin that was five or fewer years old was, in fact, destroyed. They're the ones moving here accusing the client, my client, the plaintiff, of violating the law. I have a question. Does it matter whether it actually was or whether the company thought it was? I'm sorry. Say that again. Does it matter for this purpose whether there actually was a legal violation as to the — or whether the company thought there was? No. The violation has to have occurred, in fact, because subsection 1 of the employment agreement on page ER1186 says, willful violation. I — In fact, the context of the clause suggests that what the contract was really getting at was theft, bribery, and embezzlement, but set those aside, they have to prove that there was a material violation of the law. I have a question. Even if you were to win on those grounds, doesn't — isn't there an alternative ground for the summary judgment? Isn't the fact that these assets — there's a asset purchase agreement, and there's no question the coups were destroyed. Isn't — isn't that grounds in and of itself? No. And the reason for that is if there was no legal obligation to maintain these documents, they are not — Aren't they assets of the — whether there's an obligation to — you know, if I own a chair, there's no obligation to keep the chair, but you destroy the chair, haven't you destroyed one of my assets? The short answer is the asset purchase agreement describes what assets are, and it's very hard to construe a piece of paper that doesn't have to be maintained as an asset that's covered by that contract. It would be akin to firing somebody for cleaning off his or her desk of papers that they no longer need. But these are records of things that occurred, so how are they not an asset? And that's another problem with this case. Those documents, the alleged COOs that were destroyed, were retracted, admittedly invalid from the outset, and issued in error, which undermines the entire idea that there was a retention obligation in the first instance because they were invalid. But aren't they records of what occurred? In other words, as a business, don't you want to keep a record of what occurred, especially if you may be in violation of the law? No. And the reason for that is in excerpts of record 1610. 1610, the defendants themselves tell the clients who received these COOs they're no longer valid and should not be used to document the country of origin. The defendant said these are worthless at this point, and then they reissued brand-new ones. But it doesn't stand or fall with the same five-year problem. And here you did raise the five-year problem. In what sense, Your Honor? Doesn't this question of the assets still essentially stand or fall with the five-year problem? Because the question is whether they actually came from the other company or didn't. I agree that if you're out over your time. So I'll give you a minute, everybody. Well, thank you. Your Honor, may it please the Court, Lee Marshall for the defendant here. I think my opponent wishes he had been the trial lawyer in this case because he's litigating an entirely different case than what we litigated below. Judge Oreck, on page 7 of his opinion, said Roberts does not dispute the applicability of these three regulations. And he didn't, standing up here, as I understand it. So maybe we should just get over that. Well, I think it applies to the five-year issue as well. But we cited to the complaint, the second amended complaint, the admissions in it, in our summary judgment motion for the proposition that these COOs, at least some of them, were within the five-year period because they were post-acquisition. The acquisition was August of 2012. This shredding session occurred in January of 2014, so about a year and a half later. And we cited paragraph 46 where Mr. Roberts alleged that the Korean customers had retained copies of the COOs at issue because they had an obligation to maintain them within five years. He's alleging that we could have gotten them from somewhere else because we were still within the five-year period. That's in paragraph 46. Paragraph 47 is the other admission that we talked about with respect to what Mr. Duffy told him at the time. About half of them were — Talked about just now, yes. That the admission in the complaint in paragraph 47, excerpt of record 1430, that Mr. Duffy told him at the time of the shredding that at least some of the COOs were from after the acquisition, which would make them within the five-year time period. Does that combination of facts overcome the issue of willfulness? I don't think that there is an issue of willfulness in this case. All right. Tell me how — If you look at the particular clause, the material violation of law clause that we're relying on, there isn't a willfulness. Willfulness does not appear in that clause, I don't believe. But there's no question in my mind when you actually ask someone to shred documents and they shred documents that that's — that's willful. In addition to those two admissions, we have Mr. Roberts admitting in his deposition, and this is part of the summary judgment record, that this is what Duffy told him. He admits in the summary judgment record that he thought he could get the COOs — What do you mean by — what do you mean by the summary judgment record? It was part of the deposition excerpts that we submitted to the district court as part of our summary judgment file. But why were we just told that it wasn't cited to the district court? Well, he's making a distinction between when we — when we made the statement in our brief that this was the five-year, that they were within the five-year, we only cited to the complaint. But the deposition transcripts that contain these admissions from Mr. Roberts and Mr. Duffy — But the deposition transcripts were or weren't attached to the summary judgment motion. Yes, Your Honor. Those excerpts were there. I see. So all he's quibbling about is what E.R. — what record site you put in the brief, even though it was attached to the — to these. Okay. That appears to be the case. And, of course, you can affirm on any basis supported in the record. And this one clearly is. I think the other thing that I would point to on this five-year argument is he cited E.R. 1610, which was our — my client's letter that was sent three months later to the Korean customers where we said these COOs were issued in error because Mr. Duffy should not have signed them on the ConAgra letterhead. And there's a list of them. These are the very ones that Mr. Duffy was asked to shred. And they're all from May of 2013 to January of 2014. I thought there were only two. Well, there — Mr. — there's a — there is — when we deposed Mr. Duffy, he thought that he shredded two. This was a couple years later. That was his recollection of the deposition. So there is some inconsistency in the record between what Mr. Roberts — the number of COOs that he alleged were shred. Material fact. Right. A disputed material fact? Not what — it may be disputed, but it's not material. Whether it was two COOs that were shredded or 12. Well, but it is if you're going to rely on that list. I'm sorry? But it is materially if you're going to rely on the list and maintain that everything on that list was shredded. All of the COOs on that list on ER 1610 were post-acquisition. Yes, but they weren't all shredded. It doesn't matter. If he only shredded two on that list — Oh, I see. At least two of them were shredded is what you're saying. They would have been post-acquisition. I understand what you're saying. They would have been within a five-year period. Okay. So, you know, at the end of the day, we just have a complete divergence between how this case was litigated below and what we're trying to argue about on appeal. We think that all of these arguments have been waived. We believe that — Well, it isn't — I mean, the way you're describing it now isn't so much that — I mean, they were waived because they weren't viable because, in fact, the record is substantial — established otherwise. That's really your argument, right? I mean, you're not really — I think it's both, Your Honor. I think there's a reason they didn't make the argument, because the facts so clearly established that they were within the five-year period. And so what my opponent seems to be trying to rely on is a sort of a hyper-technical working of the summary judgment standard, which I just don't think applies here. You know, we have an extremely material violation of law, $100,000 per penalty under 15 CFR 76.4.3. We're talking about the potential denial of export privileges for a company that's in the export — What about his argument that there really wasn't any obligation to retain these documents because they were not the right documents? That's not what our expert said. If you look at the Denise Walker expert report, which is quite long, you will see that she disagrees with that, and she was in the export business for 15 years. The regulations are dense here, but I think the one regulation I would point the court to is 15 CFR 30.10, which says, All parties to the export transaction shall retain documents pertaining to the export shipment for five years from the date of the export. That's very broad language. And what — The position would be that fraudulent or improper documents pertain to the export. Well, if customs had come in and audited my client, Your Honor, they would be wondering, Why is it that we have COOs that were issued in April 2014 for a transaction that occurred back in May of 2013? And you maintain all the records to show exactly what happened. And there is a provision in the CFR — I don't have the code in my mind right now, but it's in Ms. Walker's expert report — that it says when you have falsely issued documents related to a transaction, an export transaction, or incorrect, that the penalties for that will be mitigated if you promptly and voluntarily correct it. So one could certainly imagine why you would want to keep the entire paper trail, the old ones that were incorrectly issued by Mr. Duffy signing on behalf of ConAgra, why they were corrected, and then the corrected ones, because you want to be able to show that mitigation of the harm and the correction of the documents. And as I said, 15 CFR 30.10 says all documents pertaining to the transaction. So I think it's a very broad provision here. And frankly, Your Honor, my client doesn't think that the answer to fraudulently issued documents is to shred them. That's not what they wanted to do. And they believe that there was a material violation of law here with substantial potential penalties. It triggered an audit that went into absolute hyperdrive by the King & Spalding firm once they learned about the shredding. There were serious, serious consequences here that this company was trying to avoid. And the last thing that they wanted was to continue to employ an individual who thought that shredding documents was the solution to a problem. I'm happy to answer any other questions. Thank you. Thank you. I realize we ran long on time, but if I have one minute for rebuttal. You have a minute, if you want. The Walker report is really instructive on this. Now, none of this was cited to the district court, but since they raise it, take a look at excerpts, pages. Well, is he, just so I know, is he right that, in fact, this deposition was attached to the summary judgment motion, and it just didn't have the art, it didn't have the cite in the part of the brief? There were portions of the transcript attached, but I do not know if these portions were attached. You can't represent that they weren't, and he represented that they were. Either way, I can't. As I stand here now, I can't say that. I mean, you know, there is case law about what you have to cite. But the driving force on that issue, Your Honor, is Federal Rule 56c1a. It expressly imposes the obligation that the party, quote, must, end quote, cite to the evidence that supports it. Kagan. We have case law on this. I'm surprised you didn't cite it. I mean, particularly there's one case from 1970 that I know about, I mean, from 2000 that I know about, but there's a fair amount. And I'm not sure it quite goes as far as you're saying, but, I mean, it certainly has to be attached, but whether it has to be cited as such. And if you look at the advisory committee notes from the amendments in 2010, they make clear that you've got to cite it, because you can't throw 80 page 800 pages in front of a judge and say it's in there somewhere. That's unfair to everybody. I think we can agree at that. But with respect to the rebuttal issues, the Walker Report, pages 1383 and 1384, she says that it was Duffy's signature on the certificates that required the defendants to retract them and withdraw them and replace them. So this entire problem isn't a document destruction problem, but it's the fact that Duffy put his name on these certificates. And that's what created the problem. But that's what made them illegal, and that's why they were shredded. Correct. But that's what also made them invalid. And there's nothing in the record to suggest that these regulations require the retention of documents that the defendants admit are invalid and misdemeanor. All right.  Thank you very much. Thank you. The case of Roberts v. Jamin worldwide is submitted. And we'll go to the last case of the day and of the week, Center for Biological Diversity v. United States Forrester's.
judges: Berzon, Friedland, Cardone